Good afternoon, Your Honor. Before I present my argument, I would like to just state that I am a little under the weather, and I apologize in advance if I ask you to repeat the question. May it please the Court. The principal issue in this case is, can Commerce apply a statutory exception applicable to investigations when the statute does not provide for such an exception in reviews? Could I ask you a question about the SAA? Because I asked my clerk to see what the SAA said about this, and there is a provision in the SAA at page 843, which I'll read to you. I'm sure you don't have. It says the agreement reflects the express intent of the negotiators that the preference for the use of the average-to-average or transaction-to-transaction comparison be limited to the investigation phase of the anti-dumping procedure. Therefore, as permitted by Article 2.4.2, the preferred methodology in reviews will be to compare average-to-individual export prices. So that sounds as though quite apart from the question of whether the targeted dumping provision applies here, that in reviews, the transaction-to-average comparison is the one to be used anyway. What am I missing here? Am I misunderstood? There was also a section in the SAA that also provided that, in a departure from the previous methodology, that in investigations, in a parasitical language, not reviews, national authorities will provide a calculation method on an average-to-average basis. But your argument here is that the targeted dumping provision doesn't apply to reviews. It only applies to investigations. In reviews, you can't use the average-to-transaction comparison that is provided for in connection with the targeted dumping provision. No, we do not argue that you cannot use the average-to-average comparison in reviews. Not average-to-transaction. You can use an average-to-transaction. Obviously, you can use it. But in this case, under the regulations that were used, the principal methodology is average-to-average. That is what they used in this investigation. What we claim is that if Commerce uses the average-to-average methodology, as it did here, it cannot then apply an exception, which is only applicable to investigations. We are not arguing... The exception allows them to use an average-to-transaction comparison, correct? Correct. If there is a determination... We are objecting to, under the statute, an exception is provided to allow Commerce to first do an analysis... Just try to answer my question. You're objecting to their use of an average-to-transaction comparison based on a finding of targeted dumping. Correct. But what I'm saying to you is that the SAA appears to say that in reviews, the preferential method, quite apart from targeted dumping, is average-to-transaction. That is correct, Your Honor. So, why are we here? Because that is not what was done here, Your Honor. Here, there was a preliminary determination based upon an average-to-average methodology in calculating the anti-dumping margin. After the preliminary... Are you saying that because they started using an average-to-average methodology, they weren't permitted to switch to an average-to-transaction methodology? The regulations that... No, no, that's a yes-or-no question. They cannot use... There is no exception provided. So, let me ask you this then. If instead of starting with the average-to-average, they had started with the average-to-transaction methodology, would that have been okay? That is what they used in previous reviews. That was the methodology for 14 years prior to this review. The AT method was the preferred... Wait, I'm not understanding what you're saying. It seems to me that the arguments in your brief were that the statute excluded the use of the average-to-transaction methodology altogether in administrative reviews. Clearly, that's not what you're saying today. But I don't understand what you're saying because they did use an average-to-transaction methodology here, which you now seem to say was okay. I don't get... I understand your argument. Okay. Under the regulations that existed during this review, the preferred method was the average-to-average method. Commerce determined a margin based upon average-to-average. It then applied an exception that does not exist in the statute... Okay, that's what I want to ask you about. You say they did the average-to-average first and then applied an exception. If instead of doing that, they would have just started out saying, we think there might be targeted dumping here. We're going to start with an average-to-transaction methodology. Would that have been permissible? Under the regulations that exist, they must start with an average-to-average methodology. They cannot first go to the... And then, under your view, they're never allowed to use the exception for average-to-transaction? Not on the basis of a targeted dumping analysis. But they can do it without a targeted dumping analysis based on the part that I read you from the SAA? The SAA and the regulations in that respect are contrary. Because what the SAA is saying is that in a normal situation, in a review, commerce starts with the AT method. With the what method? The average-to-transaction method. And there is no reason then to apply an exception because you start off with the AT method. And that's the way it was done for 14 years. So what difference does it make? You say for 14 years they've used the average-to-transaction. They're now using the average-to-transaction again. What's the matter with that? Because under the regulations, they first start with the average-to-average. Okay? And under the regulations... But their regulations also explicitly permit them to use an average-to-transaction methodology if they think there's targeted dumping. Correct. But they're using that because they're taking the exception provided for in investigations. No, they're not at all. You just said they've used the average-to-transaction methodology in reviews for 14 years. It's not based upon the statute. It's based upon what their past practice is, and the SAA recognized that past practice. Yes, but they then changed their practice. This was the first review where they, and what they are doing currently, is applying an average-to-average methodology for calculating anti-dumping from the start. For 14 years, they applied average-to-transaction with zeroing. They don't do that now. Instead, they start with the average-to-average, and then applying the exception that only applies to investigations under the statute. If they find targeted dumping, then they go to the AT method, the average-to-transaction method. What we are arguing is that under the statute, the exception only applies to investigations. But the logic of that argument, then, is that they can never use the average-to-transaction methodology in reviews. If they change, again, their regulations, but what they... No, but you're saying that the statute only provides the exception for investigations. If they can only use the average-to-transaction methodology in investigations, and whatever they do under the regulations, they can't do it for reviews. If that's your view of the statute. Well, that's because they changed the regulation. But the statute itself doesn't place any restriction on Commerce's selection of a comparison method in reviews, does it? Well, the SAA... It places on investigations, but not on reviews, right? 1677F1D1B. It places it... It's not a restriction, Your Honor. We think that the statute provides for an exception in investigations, allowing the administrating authority to conduct a targeted dumping analysis, and then use an alternative method. But it doesn't provide any such... It doesn't provide anything about that methodology in reviews. No, it does not. So, since it's silent, why can't an agency fill the gap? Because if you look at the statutory structure, the intent in Congress is clear. The intent of Congress is clear. It just said in the SAA that you can use the average-to-transaction methodology in reviews. But that's not what it was done in this case, Your Honor. They used the average-to-average methodology. No, they didn't. They started out with the average-to-average. That's true. They decided it didn't fully capture the dumping going on, and they elected to use the average-to-transaction methodology. By applying the exception that only applies to investigations. I'm sorry. You're baffling me. So you say that if they had started with the average-to-transaction methodology, that would... That would be contrary to the regulation that now exists. Because, in your view, the regulations only allow average-to-transaction if there's a finding of targeted dumping. That's the way the regulation now reads. So you talk about the statute being silent as regards to reviews, but doesn't the statute actually specifically contemplate an average-to-transaction methodology for reviews when it sets a time limit on what transactions you can consider when you're using that methodology? I don't disagree with that, Your Honor. And that's the way it was done for 14 years prior to this review. But if that is still in the statute, that it requires, if you're using the average-to-transaction methodology, you only look at transactions within a month of the period, then that is Congress's specific intent, that you can use an average-to-transaction methodology in a review period, isn't it? I don't disagree that Congress contemplated... So if Congress has a regulation that says the preferred method is X, the fact that Congress would still allow them to use Y doesn't mean that they're exercising an exception under the statute. The statute already allowed them to do that. But it's arbitrary and capricious to treat one plaintiff or one respondent different than the other. Well, that's not the argument you've made. The statutory structure... I mean, isn't there a long history of precedent that commerce has great latitude in determining how it does each initial review period with regard to each different company? If you look at the statutory structure, there are provisions in the statute, which I will cite right now, 1677 F1C and E, which provide for similar exceptions. And in each of those provisions, Congress stated that the exception is applicable to investigations or reviews. In this particular case, with the exception, only applies to investigations. So when you argue that the silence with respect to reviews allows the administrative authority to provide for that exception for reviews, that is contrary to this statutory structure and construction. When Congress intended an exception to be applicable to both reviews and investigation, it so provides for that. Is what you're saying that commerce could use the average-to-transaction methodology in reviews, but it couldn't do it because it found targeted dumping? Is that what you're saying? No, I'm not. What we're saying is that commerce sought by its regulation to calculate a margin using the average-to-average method. The statute provides that you can use an alternative methodology if you start with the average-to-average method in investigations, but does not provide for a similar exception in reviews. Okay, I think we're out of time. We'll give you one minute for rebuttal.  The judgment of the trial court should be affirmed and commerce's final determination should be sustained. Commerce's interpretation of 19 U.S.C. 1677 F-1D2 to provide for the consideration in administrative reviews of the pattern of prices and application of an alternative comparison method is entitled to deference under Chevron Step 2. Do we even need to get to Chevron Step 2? Once you look at the statute that explicitly references the average-to-transaction methodology in terms of the time limits for looking at transactions in the SAA, it seems pretty clear that Congress itself intended to permit this use of an average-to-transaction methodology. Correct, Your Honor, that in certain circumstances that the average-to-transaction methodology would be appropriate in commerce. The gap is that if Your Honors look at 1677 F-1D, that under investigations the comparison methods are set out and when to use those comparison methods, when to use average-to-average, when to use average-to-transaction, when to use transaction-to-transaction, but the gap is that in reviews there is no mechanism provided. Now, under the SAA, it explains that commerce's practice at the time was to use, to prefer, average-to-transaction. As explained in the final modification that commerce issued in 2012, the average-to-transaction preference was changed because of its obligations under the WTO. And because of those obligations, commerce determined that it was no longer going to prefer the average-to-transaction, that it was then going to prefer, excuse me, it was going to follow its practice in investigations. And that was all under the Chevron Step 2 because, again, the comparison method that was going to be applied in reviews was not defined by the statute. I don't understand why it's Chevron Step 2. I mean, as Judge Hughes pointed out, the statute references this, and the SAA, which is an unusual piece of legislative history, which almost has the same significance as the statute itself, it says that this average-to-transaction method will be used. Well, yes, an average... Right, so? Well, average-to-transaction, at the time that the legislation was passed, the average-to-transaction was the preferred methodology. At the end of the day, if the argument is, and it seems to be this is what the argument is that JBS is making, is that the commerce was not permitted to use the average-to-transaction. Clearly, under the SAA, it was contemplated by Congress that commerce had the ability to apply average-to-transaction, and, in fact, the statute specifically states under D2... So what's sort of the end of it, isn't it? Well, we would argue, yes, we would agree, yes, Your Honor, but in the alternative that... What you're saying is whether or not you can use it under the statute is plain on the face. On the face. The circumstances in which you can use it were not dictated by Congress, and you promulgated regulation that those are what we should get deference to. Yes, yes, Your Honor. And, in any case, preferred is not an absolute. Correct. And that's what you would find, actually, in the current regulation, 351414C, I believe, is that commerce is to use average-to-transaction or an alternative comparison method as is appropriate in a particular case, and the final modification also says on a case-by-case basis. So commerce is contemplated, and Congress contemplated that commerce could apply it. At the time, the methodology was to prefer A to T, but it was obviously contemplated by Congress and the administration at the time, as reflected in the SAA, that certainly, and also in the statute, that commerce could apply average-to-transaction. And, again, under Subjection D-2, clearly the average-to-transaction methodology is contemplated. It is actually stated what price period commerce is to use in applying the average-to-transaction. So if the argument is that commerce erred in using average-to-transaction, clearly, and that's, at the end of the day, is what we're arguing, right? At the end of the day, JBM is saying commerce should not have used average-to-transaction. Clearly, commerce was contemplated, that commerce was allowed to use average-to-transaction when it found to be appropriate. Anything further? I'm sorry? I say anything further? On this particular issue? Anything. Anything. Anything further? You don't have to use all your time. I mean, one issue I would, the fourth issue, I think, is worth discussing from our perspective because this is an issue that actually is going to come up in another case before the Court in Borison, and that appeals to be discussed in April. The issue of the plain language of 19 U.S.C. 1677 F-1 D-1B, which is the argument that commerce is required to consider the intent or the business reasons behind patterns of prices, and we would encourage the Court to read the statute, the plain language of the statute. There is absolutely no support in the statute that would require commerce to consider these other factors. The factors are clearly laid out. There's a pattern of prices that differs significantly among purchasers' regions or time periods, and commerce explains why that pattern cannot be addressed using the average-to-average or transaction-to-transaction. Commerce may apply the average-to-transaction method. There is no mention of any criteria in there that would require commerce to apply that. It doesn't mention comparison methods. I'm sorry? It doesn't dictate comparison methods. Right, right, exactly. But in D-1B, looking at the actual pattern of prices, the analysis there and whether to use average or transaction, it does not state that commerce is to find. There's a pattern explained by a particular reason. It states that if commerce finds this pattern and explains it and then why it can't be taken into account, it can use the average-to-transaction. There's absolutely, again, no support in the statute, and J.B.F.'s argument fails under Chevron Step 1, and certainly under Chevron Step 2, it was reasonable for commerce to consider that. And one final note is that makes sense because the pattern of prices is meant to look at suspicious price patterns. It doesn't look at the home market prices. It looks only at the U.S. prices. So the idea that dumping is supposed to be addressed doesn't make sense because that's not the purpose of the pattern of prices. It's just looking at what's happening on the U.S. side. And if your Honors do not have any further questions, we would respectfully request that the Court affirm the judgment of the trial court. Thank you, Ms. Saban. Thank you. Mr. Miloski? I think what's not addressed is a question that an exception is uniformly, narrowly construed. And in this particular case, the exception is only applied by statute with respect to investigations. I think it is a slippery slope to allow commerce in this particular situation or other situations to apply an exception where the statute does not apply it to a particular provision. And this is exactly what has happened here. Commerce determined a time to use the average-to-average method in this review and then sought and did by applying an exception that is applicable only to investigations to this review. We think that would lead to a slippery slope of allowing commerce to apply an exception to other provisions in the anti-dumping duty laws where they do not exist. Okay. Thank you, Mr. Miloski. Thank you, Your Honor, for the case.